**SECOND DIVISION
DOYLE, P. J.,
DAVIS, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**May 8, 2026**

# In the Court of Appeals of Georgia

A26A0384. BROYLES v. MCNEAL.

DOYLE, Presiding Judge.

Joshua Broyles, appearing pro se, appeals from the trial court's order addressing his petition of legitimation as to his paternity of G. N. B. ("the child") and granting sole physical and legal custody to the mother, Fayth McNeal; granting Broyles limited daytime-hour visitation; and ordering Broyles to direct the Social Security Administration ("SSA") to transfer payment of the child's Social Security Disability Insurance ("SSDI") dependent benefit to McNeal rather than to him. Broyles argues that the trial court erred by limiting his visitation with the child and challenges the

order of support and the child's SSDI dependent benefit.[1] For the reasons that follow, we vacate the order and remand for further proceedings consistent with this opinion.

> When reviewing an order in a child custody case, we view the evidence in the light most favorable to the trial court's decision. We will not set aside the trial court's factual findings if there is any evidence to support them, and we defer to the trial court's credibility determinations. We review de novo, however, the legal conclusions the trial court draws from the facts.

*Mashburn v. Mashburn*, 353 Ga. App. 31, 32 (836 SE2d 131) (2019) (citations omitted).

So viewed, the record shows that Broyles filed a petition for legitimation in July 2024, requesting that the court legitimate him as the biological father of the child, who was about 14 months old at the time. Broyles also requested that he be granted liberal visitation or primary physical custody and shared legal custody, and he indicated that

---

[1] McNeal argues that this appeal should be dismissed because Broyles failed to file a discretionary application. We decline to do so because this order is directly appealable based on Broyles's challenge of the court's award of full legal and physical custody to McNeal and of the limited visitation granted to him. See *Voyles v. Voyles*, 301 Ga. 44, 47 (799 SE2d 160) (2017) ("[T]he 'issue-raised-on-appeal' rule applies to appeals from orders or judgments in child custody cases. This means that the proper appellate procedure to employ depends upon the issue involved in the appeal, even if the order or judgment being challenged on appeal was of the type listed in OCGA § 5-6-34(a)(11) and was entered in a child custody case.").

no child support order was in place at the time. In a counseled response, McNeal admitted that Broyles was the father, but requested sole legal and physical custody.

The appellate record contains pictures of Broyles and the child during the various times he had cared for her; letters from his treating physician and therapist, which stated that although he was diagnosed with schizophrenia, Broyles was financially responsible and not a danger to himself or others; and copies of text messages between the parties related to Broyles's visitation with the child, which visitation the parties had been facilitating themselves. Some of the messages indicated that Broyles was providing in-kind support, including baby food, diapers, and other supplies, which he gave to McNeal. Additionally, there are copies of a letter showing that Broyles's delivery-driver account had been cancelled as well as evidence of the amounts of his car insurance and rent.

McNeal provided a domestic relations financial affidavit, the first page of a letter from the SSA verifying that the child received a monthly social security dependent benefit of $957 per month, a child support worksheet which imputed income to Broyles in addition to his own SSDI benefit, and McNeal's attorney's invoice totalling $3,267.35.

After a hearing which was not transcribed, the court issued a final order in which it found that the parties had agreed that Broyles was the biological father, so it granted his request for legitimation. The court declined to grant Broyles's request for shared custody, instead granting sole legal and physical custody to McNeal, and ordered visitation with Broyles for eight hours every Saturday or four hours each on Saturdays and Sundays. The child support worksheet entered by the court did not impute income to Broyles, instead showing that Broyles had SSDI income of $1,915 while McNeal had income of $3,833.33, which resulted in a presumptive amount of child support for Broyles of $365.16 per month. The worksheet stated that deviations from the presumptive amount of support were not applicable. The worksheet also noted that the child received an SSDI dependent benefit based on Broyles's disability of $957 per month.

Based on this worksheet, the court ordered Broyles to "direct" the SSA to transfer payment of the total dependent benefit to McNeal because she was the custodial parent of the child and found that such transfer of the benefit would fully satisfy his child support obligation. The court also ordered Broyles to pay $1,000 in attorney fees to McNeal. This appeal followed.

4

1. As an initial matter, Broyles has failed to provide a transcript of the hearing. If

> an appeal is taken which draws in question the transcript of the evidence and proceedings, it shall be the duty of the appellant to have the transcript prepared at the appellant's expense. ... [Boyles], as the appellant here, bears the burden of showing error below. In accordance with the presumption of the regularity of court proceedings, [this Court] must assume in the absence of a transcript that there was sufficient competent evidence to support the trial court's findings.

*Reed v. Reed*, 295 Ga. 574, 577–78(2) (761 SE2d 326) (2014) (citation modified). Moreover, although Broyles is pro se, it is still incumbent on him to provide citations to the record and to applicable case law to support his appellate arguments. *Lewis v. State*, 330 Ga. App. 650, 652 (768 SE2d 821) (2015) ("A party is not held to a different or more lenient standard merely because he elected to proceed pro se. One who knowingly elects to represent himself assumes full responsibility for complying with the substantive and procedural requirements of the law.") (citations and punctuation omitted). McNeal's brief argues that Broyles used a chatbot to prepare his brief. While there are incorrect citations in the brief, at least one is a correct citation. We caution parties that the products marketed to them as "artificial intelligence," like calculators,

can be useful tools, but any language-like strings of words or citation-like strings of numbers and letters provided therefrom must be verified against actual authority and should not be assumed to exist or be correct propositions of law or fact.

That said, McNeal's response brief, which was drafted by a licensed attorney, contains no supporting citation to case law, not even to the standard of review, and contains only statutory authority in response to the issues raised by Broyles. The only case law that McNeal references are those cited in Broyles's brief. The lack of a transcript only creates a presumption of regularity, not a requirement that we affirm if the legal basis is questionable. The prudent attorney will provide supporting authority for one's position in a response brief.

2. Broyles argues that the trial court erred by granting McNeal custody and restricting his visitation to a limited number of hours on weekends because the restriction is not in the child's best interests and does not support the existing relationship between him and the child, for whom he was an active involved parent. Broyles also maintains that the trial court erred by failing to consider McNeal's poor judgment, unsafe childcare decisions, and prior misconduct when it determined custody.

Normally, the lack of a transcript of the hearing would result in the presumption that the trial court's decision is supported by the evidence presented during the hearing. See *Reed*, 295 Ga. 577–78(2). Moreover, we recognize matters of custody and visitation are left to the sound discretion of the trial court. See *Mashburn*, 353 Ga. App. at 32. Nevertheless, the deficient nature of the order requires us to vacate and remand for further proceedings. See *Pryce v. Pryce*, 359 Ga. App. 590, 591–93(1) (859 SE2d 554) (2021) (vacating order and remanding for further proceedings because trial court failed to include certain required findings in parenting plan). Cf. *Selvage v. Franklin*, 350 Ga. App. 353, 355(1) (829 SE2d 402) (2019) (vacating order and remanding for recitation of factual findings because trial court granted parent no visitation).

First, the order lacks inclusion of any required elements under OCGA § 19-9-1(b)(1), including:

> (A) A recognition that a close and continuing parent-child relationship and continuity in the child's life will be in the child's best interest; (B) A recognition that the child's needs will change and grow as the child matures and demonstrate that the parents will make an effort to parent that takes this issue into account so that future modifications to the parenting plan are minimized; (C) A recognition that a parent with

physical custody will make day-to-day decisions and emergency decisions while the child is residing with such parent; and (D) That both parents will have access to all of the child's records and information, including, but not limited to, education, health, health insurance, extracurricular activities, and religious communications.

Second, although the order states the normal custody and visitation for the parents throughout the year, it includes no provision as to "[h]ow holidays, birthdays, vacations, school breaks, and other special occasions will be spent with each parent including the time of day that each event will begin and end," or "[w]hat, if any, limitations will exist while one parent has physical custody of the child in terms of the other parent contacting the child and the other parent's right to access education, health, extracurricular activity, and religious information regarding the child." OCGA § 19-9-1(b)(2)(B), (b)(2)(F).

The order also fails to include the appropriate findings under OCGA § 19-9-3, and it lacks any statutory basis for the limitations on Broyles's visitation or why McNeal received sole physical and legal custody despite the fact that Broyles had been co-parenting the child with McNeal. Compare *Selvage*, 350 Ga. App. at 355–56(1) (citing OCGA § 19-9-3 and explaining that if requested "'the permanent court order

awarding child custody shall set forth specific findings of fact as to the basis for the judge's decision in making an award of custody'"). We recognize that as a pro se party, Broyles may not have explicitly requested such findings, but it is clear that he attempted to present evidence in support of his custody claim. Thus, in light of the obvious legal deficiencies of the order and Broyles's pro se status, we vacate the custody and visitation portion of the order for reconsideration and inclusion of any and all findings applicable to the issues noted as well as any other requirements from OCGA § 19-9-1 et seq. that this Court may have inadvertently omitted above.

3. In several enumerations, Broyles challenges the trial court's child support award and the portion of the order directing him to "direct" the SSA to transfer payment of the child's SSDI dependent benefit to McNeal. For the following reasons we vacate this portion of the order and remand for further proceedings.

"The Social Security Act provides that a dependent child of a person who is entitled to Social Security benefits is also entitled to a monthly insurance benefit." *Scarborough v. Scarborough*, 282 Ga. 427, 428 n.1 (651 SE2d 42) (2007). See 20 CFR § 404.350(a)(1) ("You are entitled to child's benefits on the earnings record of an insured person who is entitled to ... disability benefits ... if ... [y]ou are the insured

person's child[.]"), § 404.355 (defining "natural child" for purposes of a dependent benefit). The SSDI dependent benefit is a benefit for the child, and it does not belong to the parent receiving SSDI or to the child's custodial parent or guardian, assuming those individuals are not one and the same.

Generally, the SSA will make payments to a representative payee if a beneficiary is under the age of 18. See 20 CFR § 404.2010(b). Federal regulations require that a representative payee of dependent benefits use the benefit payments only for the benefit of a child and consistent with the child's best interests or hold the benefit payments in an account for the child's future use. See 20 CFR § 404.2035(a). Payments are used for the benefit of the child if they are used for the child's current maintenance. See 20 CFR § 404.2040(a). Current maintenance includes "the cost of food, shelter, clothing, medical care, and personal comfort items." Id. Any amount remaining after proper expenditures must be conserved or invested on behalf of the child. See 20 CFR § 404.2045(a). If a representative payee does not comply with these regulations, the SSA will attempt to replace the payee. See 20 CFR § 404.2050(a). Additionally, a representative payee may also be subject to criminal liability for conversion. See 42 USC § 408(a)(5).

In many cases involving dependent benefits, the custodial parent is the representative payee for the child's benefit, and state law regarding child support has been tailored for those instances, giving credit toward child support to the non-custodial parent in the amount of the benefit paid directly to the custodial parent and allowing the custodial parent to maintain control over any amount of the benefit beyond the state award of support. See OCGA § 19-6-15(f)(3)(B), (f)(3)(C), (f)(3)(D). With this background in mind, we turn to Broyles's arguments.

(a) Broyles argues that the court erred by failing to apply the child's benefit to his presumptive amount of child support.

Pursuant to OCGA § 19-6-15(b)(10) "[a]ny benefits which the child receives [from the noncustodial parent's SSDI] shall be applied against the noncustodial parent's final child support amount. The final child support amount for each parent shall be entered on the child support worksheet, together with the information from each of the utilized schedules[.]" See also OCGA § 19-6-15(f)(1)(A)(xiii), (f)(3)(A). In this case, the written portion of the order does state that Broyles was not required to pay more child support than the amount of the child benefit. In the attached child support worksheet, however, the court failed to include an amount of "final child

11

support"in Line 14 for Broyles. Instead, in Line 11 Broyles's presumptive amount of support is $365, and then in Line 12 the child benefit is $957. The failure to include a final amount in Line 14 could lead to confusion as to whether Broyles was liable for an additional $365 above the child benefit of $957. This issue should be clarified upon remand by including a final child support amount in Line 14. See OCGA § 19-6-15(b)(10) ("The final child support amount for each parent shall be entered on the child support worksheet[.]").

(b) Broyles also argues that the court erred by ordering him to direct the SSA to have the child benefit transferred to McNeal.[2] We take this to mean that McNeal should be made the representative payee. McNeal provides no citation to authority to support the court's order, and we have not discovered any Georgia authority to support this. On the other hand, we have discovered a similar case involving payment of a child's social security old-age benefit to a non-custodial father rather than to a

---

[2] We are aware that if McNeal had requested to be named representative payee prior to the appointment of Broyles, then she could have retained control over the dependent benefit beyond Broyles's presumptive amount of child support. See OCGA § 19-6-15(f)(3)(B), (f)(3)(C), (f)(3)(D). But this Georgia statute does not answer the question raised by Broyles, which is whether the trial court can order him to direct the SSA to take any specific action in this instance.

custodial mother. In *Banaker v. Krause*, 674 SW3d 564 (2023), a Texas court explained in response to the mother's request to be made the representative payee that

> [t]he authority to appoint an individual to serve as a social security beneficiary's representative payee belongs solely to the SSA Commissioner. [The mother] does not identify any Texas law that would give similar authority to the trial court and, if there were such a statue, it would violate the Supremacy Clause of the United States Constitution, which declares that federal law is the "supreme Law of the Land." Because the trial court lacked the authority to change the representative payee for the children's social security benefits, we hold that it did not err in denying [the mother']s request for appointment.

Id. at 579 (citations omitted). See also US Const. Art. VI, cl. 2; 42 USC § 405(j)(1)(A). Compare generally *Rose v. Rose*, 481 US 619, 636 (1987) (explaining that a state court may order payment of child support from veteran's benefits without violating the Supremacy Clause); *Brevard v. Brevard*, 74 N.C. App. 484, 487–89 (328 SE2d 789) (1985) (discussing the difference between the child benefit and a worker's benefit for purposes of child support and holding that the superior court of that state lacked authority to order the SSA or the representative payee to transfer that status to another parent).

We note that whether Broyles or McNeal is the representative payee for the child's benefit, the representative payee is required to follow federal law regarding the benefit. See, e.g., 20 CFR § 404.2035. Moreover, federal law provides avenues for challenging a representative payee's status or use of benefit money. See 42 USC § 1383(a)(2)(B)(xi). In any event, without citation to legal support for this portion of the order in the order itself or McNeal's brief, we are left to vacate the order as to this issue and remand for further proceedings.

(c) Based on the foregoing, we need not address the remainder of Broyles's arguments.

4. Broyles has also filed a motion for sanctions against opposing counsel. We agree that counsel's commentary in its response brief would have been better presented citing case law supporting their client's interests. That said, this motion is hereby DENIED.

*Judgment vacated and case remanded with direction. Davis, J., and Senior Judge C. Andrew Fuller concur.*