Appellant Ronald Rigel appeals the decision of the Muskingum County Court of Common Pleas regarding his three-branch motion for a review of court-ordered child support, as further discussed infra. The factual circumstances of this case cause us to review, for the first time, the impact of private disability insurance subrogation provisions on the body of law pertaining to the interrelationship between child support and social security disability benefits.
Appellee Molly Ann Rigel, nka Molly Ann Thomas and Appellant Ronald Rigel were married on October 2, 1976. The marriage produced two children: Morgan, born on January 8, 1984, and R. McGavin, born on April 18, 1990.
In October 1994, appellee filed an action for divorce. That same month, appellant began receiving long-term disability insurance benefits from Metropolitan Life Insurance ("Met Life") through his former employer, Wendy's International, due to a diabetic and heart condition.
The divorce decree of October 18, 1995, named appellee the residential parent of the two children and set child support at $266.90 per month for both children. Meanwhile, appellant had begun the process of filing for social security disability benefits, for which he was required to apply pursuant to the terms of his Met Life policy. The policy also contained subrogation language providing that, upon allowance of appellant's claim for social security disability benefits for himself and his children, Met Life could demand reimbursement for benefits previously paid.
In February 1997, the Social Security Administration completed its review and awarded primary disability benefits to appellant, retroactive to October 1993. The initial retroactive primary award to appellant amounted to over $30,000. Shortly thereafter, in April 1997, the Social Security Administration awarded derivative disability benefits to the two children, also retroactively. The children's retroactive benefit, including adjustments for attorney's fees, amounted to $21,472. The children also became entitled to an ongoing social security benefit of $270 per month, per child.
Met Life subsequently reviewed the matter and reduced its monthly disability payment to appellant from $1,333.44 per month to $64.68 per month. It also sought payment, on its subrogation claim, in the amount of $19,002.42 for primary benefits and $15,260 for dependent benefits, for a total claim of $34,262.42. Appellant remitted $18,986.84 toward the claim. Met Life also began applying the monthly $64.68 disability payments to the remaining claim, in lieu of paying appellant. It calculated a balance on the subrogation claim of $14,922.72 as of June 30, 1997.
On July 8, 1997, appellant filed a motion in the Muskingum County Court of Common Pleas requesting the following: that the ongoing derivative social security benefits paid on behalf of the children be paid to him; that in the alternative the court terminate the current child support order; and that the court render an order regarding the disbursement of the retroactive derivative social security benefits, which the court had temporarily ordered placed in an escrow account.
On February 24, 1998, the magistrate issued a decision suspending current child support in light of the children's monthly derivative benefits. The magistrate found that the new guideline child support amount based on the parties' updated income stipulations would have been $225.43 per month, per child. The magistrate further ordered that appellant was not entitled to an order applying the children's retroactive derivative benefits to appellant's obligation to reimburse Met Life. However, appellant was found entitled to recover from appellee the amount of child support that he had actually paid since the filing of the divorce until the date the court terminated support, which the magistrate determined in a brief follow-up hearing on March 19, 1998, to be $13,552.62.
Appellant timely filed objections to the magistrate's decision. The trial court overruled said objections in an entry dated April 21, 1998. Appellant timely appealed and herein raises the following four assignments of error:
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN DETERMINING THAT THE RETROACTIVE COLLATERAL SOCIAL SECURITY BENEFITS RECEIVED BY THE MINOR CHILDREN WERE NOT PAYABLE TO THE DEFENDANT RONALD RIGEL AS AND FOR THE PURPOSE OF SATISFYING THE MET LIFE SUBROGATION CLAIM FOR BENEFITS PREVIOUSLY RECEIVED.
 II. THE TRIAL COURT'S DETERMINATION THAT THE DEFENDANT'S ONLY ENTITLEMENT WAS A REFUND OF THE FULL AMOUNT OF THE CHILD SUPPORT PAID DURING THE PENDENCY OF THIS CAUSE WAS ERRONEOUS AS A MATTER OF LAW AND AN ABUSE OF DISCRETION.
 III. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN REFUSING TO ORDER IN THE ALTERNATIVE (A) THAT THE FUTURE COLLATERAL SOCIAL SECURITY DISABILITY BENEFITS BE PAID DIRECTLY TO THE DEFENDANT RONALD RIGEL, WITH THE DEFENDANT CONTINUING TO PAY CHILD SUPPORT AS CALCULATED PURSUANT TO REVISED CODE SEC. 3113.215 OR (B) THAT THE DEFENDANT RECEIVE A "REBATE" OF THE COLLATERAL SOCIAL SECURITY DISABILITY BENEFIT IN THE AMOUNT OF $210.00, WHICH REFLECTS THE DIFFERENCE BETWEEN THE COLLATERAL SOCIAL SECURITY BENEFIT PAYABLE TO THE CHILDREN AND THE CHILD SUPPORT CALCULATION PURSUANT TO REVISED CODE SEC. 3113.215, LESS THE REMAINING AMOUNT OF THE LONG-TERM DISABILITY INSURANCE WHICH DEFENDANT WAS ENTITLED TO RECEIVE.
 IV. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ORDERING THAT THE FULL AMOUNT OF THE COLLATERAL SOCIAL SECURITY BENEFIT BE PAID TO THE PLAINTIFF-APPELLEE AS AND FOR SUPPORT OF THE MINOR CHILDREN BECAUSE THE PAYMENT IS PROPERLY CHARACTERIZED AS INCOME TO THE DEFENDANT-APPELLANT. AS A RESULT OF THE FOREGOING, THE COURT MADE A DE FACTO UPWARD DEVIATION IN THE CHILD SUPPORT AMOUNT WITHOUT FACTUAL FINDINGS IN SUPPORT OF THE SAME.
 I and II
In his First and Second Assignments of Error, appellant argues that the trial court erred as a matter of law and abused its discretion in ordering that his sole remedy was a refund of the child support paid during the pendency of this cause and in ordering that the retroactive collateral social security benefits received by his children were not payable to appellant to satisfy the Met Life subrogation claim.
Our review of matters of child support mandate a standard of abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
Appellant specifically challenges the following holding of the magistrate regarding the derivative (collateral) social security benefits:
 The social security benefits paid to the parties' minor children, regardless of the named payee on the checks, belong to the children. 42 U.S.C.A. 402(d). Defendant, as the children's non-residential parent, has no claim to these benefits. Fuller v. Fuller (1976), 49 Ohio App.2d 223. Magistrate's Decision at 3.
Relying on Pride v. Nolan (1987), 31 Ohio App.3d 261,Carpenter v. Reis (1996), 109 Ohio App.3d 499, and Miller v.Miller (Alaska 1995), 890 P.2d 574, appellant urges that the derivative social security benefits should be categorized as his "rightfully earned income," thereby requiring the court to direct said benefits to him, not to his children via their representative payee, Appellee Molly Thomas.
We are not persuaded by appellant's arguments. The controlling federal statute, Section 407(a), Title 42, U.S. Code, is quite clear regarding the antialienability of social security benefits:
 The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law. Id. See, also, Philpott v. Essex County Welfare Board (1973), 409 U.S. 413; Bennett v. Arkansas (1988), 485 U.S. 395.
Moreover, the mere assertion that social security disability benefits are comparable to individual earnings does not automatically deprive the claimant's dependent beneficiaries of their federal statutory rights. Although there is scant case law on the intersecting issues in this case, a 1985 North Carolina decision sheds light on interpreting these federal antialienability provisions. In Brevard v. Brevard (1985),74 N.C. App. 484, 328 S.E.2d 789, a mother of two children filed a motion in her county district court for an accounting of the derivative social security benefits received by the children's disabled father, her ex-husband, who was also the representative payee. The appellate court first found that the antialienability exception found in Section 659, Title 42, U.S. Code[1] did not apply, then overturned the county court's order that the father transfer social security derivative benefits to the mother:
 In the present case, although the entitlement to benefits is determined in part upon their father's disabled status, the children and not the father are entitled to the funds. They are the beneficiaries, while the father is the representative payee. The exception to 42 U.S.C. sec. 407 does not apply to the present case, because the children are not individuals obligated to pay child support under state law. Hennagin v. County of Yolo, 481 F. Supp. 923, 924 (E.D.Cal. 1979). The district court thus had no power to order on 31 March 1982 that the SSA pay the children's benefits to someone other than their father, who had been designated the representative payee. Id. at 487-88, 328 S.E.2d at 792. (Emphasis added.)
We find no abuse of discretion in the trial court's reliance on federal statutory law. While portions of the 1976Fuller case, which the trial court cited, must be read carefully in light of subsequent case law, the proposition therein that derivative benefits inure directly to the children of a disabled claimant is still valid. Appellant ardently seeks to persuade us that he has a quasi-ownership interest in these derivative benefits, but the facts remain that he is not the payee and that the federal government has intended these funds to flow to parties' children. Meanwhile, appellant has provided us with no clear precedence that would provide a basis for this Court to establish an exception to Section 407, Title 42, U.S. Code under these facts.
Appellant also couches his position in general equitable terms and argues a theory of constructive trust per Aetna LifeIns. Co. v. Hussey (1992), 63 Ohio St.3d 640. However, the situation in Aetna had nothing to do with concerns about an overriding federal statute as we face in the case sub judice.
Moreover, the present record demonstrates that the trial court, in order to correct the child support overpayment, fashioned a remedy to the extent possible within the Title 42 parameters: the allowance of a lump sum judgment against appellee for support paid during the relevant time period. In so ruling, the magistrate adopted the reasoning of the Court of Appeals of Tennessee, Western Section in Howard v. Howard (August 4, 1987), Tenn. App. 1987 WL 15083, unreported. We find no abuse of discretion in the trial court's application of a similar remedy.
Appellant's First and Second Assignments of Error are overruled.
 III.
Appellant argues in his Third Assignment of Error that the trial court erred as a matter of law and abused its discretion regarding the issue of ongoing child support. He asserts error in the trial court's refusal to order that future derivative social security disability benefits be paid directly to him, with the requirement that he pay support per the guidelines in R.C. 3113.215, or to order in the alternative, that he receive a "rebate" representing the difference between said derivative social security disability benefits and the guideline support amount. We disagree.
The core of appellant's argument is what he contends is an inequitable monthly "windfall" to the appellee. This Court has previously addressed the issue of discrepancies between monthly government benefits and monthly guideline child support amounts in relation to the former Aid to Dependent Children program. InIn the Matter of Steven L. Prince (Jan. 21, 1992), Stark App. No. CA-8661, unreported, the obligor was under an order to pay $271 per month in child support for his son to obligee-mother, who was also the custodial parent of two other children. The facts indicated that obligee would have received an additional $79 per month in A.D.C. benefits for obligor's child, plus the first $50 per month of the obligor's child support payment, pursuant to former R.C. 5107.07(C), for a total of $129. Despite the $142 difference in these amounts, we stated as follows:
 Father asked the trial court to order that his child support payment be reduced to $129, because that amount is actually the only amount that will apply to Steven's support. The trial court refused, finding that such a ruling would contravene public policy, and that father's obligation was unaffected by the mother's assignment. We agree with the trial court's analysis of the impact of R.C. 5107.07 on father's obligation. While we acknowledge the force of his arguments, those arguments are not for the judiciary, but are far better addressed to the legislature that authored that statute. Id. at 3.
We similarly rule in the case sub judice. We are not inclined to second-guess the Congress of the United States and its methods for designating beneficiary amounts for the dependents of disabled workers, especially where there is no demonstration that such a decision furthers the best interests of the children involved.
We find no error in the trial court's decision not to alter the payment of the derivative benefits or fashion a "rebate" based on a variance between the support guidelines and federally-established social security dependent benefit levels.
Appellant's Third Assignment of Error is overruled.
 IV.
In his Fourth Assignment of Error, appellant argues that the trial court erred by essentially rendering a "de facto upward deviation" of child support without making specific factual findings in support thereof. We disagree.
In support of this assignment of error, Appellant relies onFruchtnicht v. Fruchtnicht (Sept. 2, 1997), Butler App. No. CA96-12-264, unreported, which reiterated the mandate of the Ohio Supreme Court in Marker v. Grimm (1992), 65 Ohio St.3d 139, that a trial court technically adhere to the requirements of R.C. 3113.215. The Supreme Court in Marker, in ordering a remand, specifically directed that "* * * the trial court should calculate and award support in accordance with the procedures set forth in R.C. 3113.215 and explain, in its journal entry, any deviation from the basic child support schedule and worksheet." Id. at 144.
In light of this language, we disagree with appellant's contention. Clearly, the trial court sub judice was directing a suspension of, and not simply a deviation from, the support guideline worksheet, in recognition of the future monthly social security disability derivative benefits earmarked for the children.[2] However, assuming arguendo that the technical mandate of Marker is applicable to an order completely suspending statutory child support in these types of cases, the findings of fact in the magistrate's decision ultimately approved by the trial court clearly articulate the grounds for said suspension of support. Also, a completed but unadopted Ohio Support Guideline Worksheet is attached, for which the parties submitted stipulated income figures. We would thus find in the record sufficient compliance with Marker.
Appellant's Fourth Assignment of Error is overruled.
For the foregoing reasons, we hereby affirm the judgment of the Court of Common Pleas, Muskingum County, Ohio.
By: Wise, P. J., Gwin, J., and Reader, V. J., concur.
---------------------------
---------------------------
 --------------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is affirmed.
---------------------------
---------------------------
 --------------------------- JUDGES
[1] The federal statute pertaining to this exception reads in part:
 Sec. 659. Consent by the United States to income withholding, garnishment, and similar proceedings for enforcement of child support and alimony obligations
(a) Consent to support enforcement
 Notwithstanding any other provision of law (including section 407 of this title and section 5301 of Title 38), effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the Armed Forces of the United States, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to withholding in accordance with State law enacted pursuant to subsections (a)(1) and (b) of section 666 of this title and regulations of the Secretary under such subsections, and to any other legal process brought, by a State agency administering a program under a State plan approved under this part or by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony.
[2] Appellee discusses in her brief the trial court's decision to suspend child support rather than applying the modification formula outlined in McNeal v. Cofield (1992), 78 Ohio App.3d 35. However, in the absence of a cross-appeal we need not reach that issue.