Ralph MARENGO and Vona Marengo, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

**FIRST MASSACHUSETTS BANK, N.A., Defendant.**

No. CIV. A. 00–40193–NMG.

United States District Court, D. Massachusetts.

July 18, 2001.

Sandra L. Mayes, Legal Assistance Corp. of Central Mass., Worcester, MA, for plaintiffs.

Kevin L. Courtney, Bruce D. Berns, Abendroth, Berns & Warner, Wellesley, MA, for defendant.

**MEMORANDUM AND ORDER**

GORTON, District Judge.

This case arises out of the setoff by defendant of plaintiffs' bank account.

Pending before this Court is defendant's motion to dismiss for failure to state a claim upon which relief can be granted (Docket No. 4).

## I. *Background*

Plaintiffs, Ralph and Vona Marengo ("the Marengos"), are elderly, disabled individuals. In the 1970s, Mr. Marengo opened a checking account and an unsecured line of credit with Shawmut Bank. When Shawmut Bank was acquired by Fleet Bank, defendant, First Massachusetts Bank ("FMB"), assumed operations of the former Shawmut Bank branch where the Marengos had their account and became the holder by assignment of the obligation on the unsecured line of credit. At some point, Mr. Marengo became delinquent on the unsecured line of credit and, in February, 1998, FMB exercised a setoff of the Marengo's NOW checking account in the amount of $343.80 to collect at least part of that debt. At the time of the setoff, the only funds contained in the NOW checking account consisted of the Marengo's Social Security and Supplemental Security Income benefits.

The Marengos complain that they were not given advance notice of the setoff or an opportunity to dispute FMB's right to setoff the deposited funds. They also contend that the setoff caused them to bounce five checks totaling $232.80 and to have suffered humiliation and emotional distress as a result thereof.

On June 22, 2000, the Marengos sent FMB a demand letter seeking relief under the Massachusetts Consumer Protection Act, M.G.L. c. 93A. More than 30 days passed without a response and the Marengos then filed the instant suit in Worcester Superior Court on September 11, 2000, seeking damages and declaratory relief. The complaint alleges: 1) improper taking of exempted Social Security and Supplemental Security Income benefits in violation of the Social Security Act, 42 U.S.C. §§ 407(a) and 1382(d)(1), 2) unfair or deceptive acts or practices in violation of M.G.L. c. 93A, §§ 2 and 9, and 3 intentional infliction of emotional distress. On October 30, 2000, FMB removed the case to this Court claiming federal question jurisdiction on the basis of plaintiffs claims for violation of the Social Security Act.

## II. *Standard for Motion to Dismiss*

A motion to dismiss for failure to state a claim may be granted only if it appears, beyond doubt, that the plaintiffs can prove no facts in support of their claim that entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must accept all factual averments in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir.1992). The Court is required to look only to the allegations of the complaint and if under any theory they are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *Knight v. Mills*, 836 F.2d 659, 664 (1st Cir.1987).

## III. *Analysis*

■ Under the Social Security Act's anti-assignment provision, social security benefit payments are not transferable or assignable and are not "subject to execution, levy, attachment, garnishment, or other legal process...." 42 U.S.C. § 407(a). The purpose of § 407 is to protect social security beneficiaries from creditors' claims, *Dionne v. Bouley*, 757 F.2d 1344, 1355 (1st Cir.1985), and "it imposes a broad bar against the use of any legal process to reach all social security benefits." *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 417, 93 S.Ct. 590, 34

L.Ed.2d 608 (1973). Section 407 also applies to Supplemental Security Income benefits. 42 U.S.C. § 1383(d)(1)(incorporating § 407 by reference).

The parties agree that FMB's exercise of its right of setoff does not constitute an execution, levy, attachment or garnishment under § 407. They dispute, however, whether the phrase "other legal process" encompasses and therefore prohibits setoffs. FMB contends that "legal process" requires court action and thus does not include extra-judicial self-help remedies such as setoffs. It argues, accordingly, that the federal claims must be dismissed and that this Court should decline to exercise supplemental jurisdiction over the remaining state law claims. The Marengos respond that the phrase "other legal process" should be construed broadly to include non-judicial remedies such as setoffs.

FMB relies principally on two cases which hold that a bank's right of setoff is not "legal process" because it involves neither the courts nor the government. *See Frazier v. Marine Midland Bank, N.A.*, 702 F.Supp. 1000, 1002–04 (W.D.N.Y.1988); *In re Gillespie*, 41 B.R. 810, 812 (Bankr.D.Colo.1984). As an initial matter, this Court notes that *In re Gillespie* has been substantially eviscerated, if not overruled, by *Tom v. First American Credit Union*, 151 F.3d 1289 (10th Cir.1998) which holds that an attempt to setoff an account containing Social Security benefit payments violates § 407. *Id.* at 1291–93. Moreover, the instant case is distinguishable from *Frazier* in which the plaintiff had signed an agreement stating that the defendant bank could use the monies in her account to setoff any indebtedness she might have to the bank. *Frazier*, 702 F.Supp. at 1001. By contrast, there is as yet no evidence that Mr. Marengo signed such an agreement when he opened the checking ac-

count and line of credit with FMB's predecessor.

In any event, this Court is not persuaded by the reasoning in either *Frazier* or *In re Gillespie*. Federal benefits statutes "should be liberally construed . . . . to protect funds granted by Congress for the maintenance and support of the beneficiaries thereof. . . ." *Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159, 162, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962) (interpreting exempt status of benefits paid out by the United States Veterans' Administration) (citations omitted); *see also Philpott*, 409 U.S. at 416, 93 S.Ct. 590 (analogizing the protection given by § 407 to the veterans' benefits exemptions reviewed in *Porter* ); *In re Capps*, 251 B.R. 73, 75 (Bankr.D.Neb.2000) (construing § 407 liberally in light of *Porter* ). As noted by the Tenth Circuit Court of Appeals, there is

no reason why Congress would, on the one hand, choose to protect Social Security beneficiaries from creditors who utilized the judicial system, a system that is built upon the fairness and protection of the rights of litigants, yet, on the other hand, leave such beneficiaries exposed to creditors who devised their own extra-judicial methods of collecting debts. Such a construction of § 407 would run contrary to both logic and the spirit underlying the Social Security Act.

*Tom*, 151 F.3d at 1292 (citations omitted); *see also Crawford v. Gould*, 56 F.3d 1162, 1166 (9th Cir.1995) ("[Section 407] was not designed to preclude use of only the judicial process to obtain Social Security benefits.").

Moreover, extra-judicial attempts to reach Social Security benefits may violate § 407 where the procedure used is unduly coercive. *See Crawford*, 56 F.3d at 1165–68 (Section 407 bars state from deducting Social Security benefits in order to pay for the care of institutionalized psychi-

atric patients without patients' voluntary consent.); *cf. Fetterusso v. New York*, 898 F.2d 322, 328 (2d Cir.1990) (finding no § 407 violation in absence of evidence that mentally ill, committed persons did not voluntarily agree to use of their Social Security benefits to pay for the costs of their care and treatment).

Although clearly less restricted than an institutionalized individual, the Marengos were nonetheless at FMB's mercy to the extent that the bank had immediate access to their account and could, without notice, exercise its right of offset. As FMB points out, the Marengos could simply have closed their checking account and walked away, but there is something inherently coercive in FMB's actions which this Court finds that § 407 was designed to prevent. Accordingly, this Court reads the phrase "other legal process" to include both judicial and extra-judicial self-help remedies, including setoffs. *See Tom*, 151 F.3d at 1293 ("setoff constitutes 'other legal process' under § 407"); *In re Capps*, 251 B.R. at 75–76 (same). The motion to dismiss will, therefore, be denied.[1]

## ORDER

For the reasons set forth in the Memorandum above, defendant's motion to dismiss (Docket No. 4) is DENIED. So ordered.

---

**1.** FMB also urges this Court to adopt the definition of "legal process" set forth elsewhere in the Social Security Act, *see* 42 U.S.C. § 659(i), and in Black's Law Dictionary, both of which limit the term to court-enforced remedies. Section 659(i), however, specifically defines "legal process" only for purposes of § 659 and FMB offers no basis for importing that definition into § 407. Similarly, the bank advances no support for adoption of the traditional definition from Black's Law Dictionary. To the contrary, as discussed *supra*, the relevant case law argues against applying a limited definition of "legal process" to § 407.